[No. 16914.  Department Two.  May 31, 1922.]

SOUTHERN MINING AND DEVELOPMENT COMPANY,
*Respondent,* v. E. B. CLARK, *Appellant.*[1]

MINES AND MINERALS (17)—CONVEYANCES—CONTRACTS FOR MINING
RIGHTS.  An assignee of an option to purchase mineral lands who
agreed to pay a certain sum therefor, if any part of the lands were
purchased under the option, cannot evade liability for the price on
the ground that the option was cancelled and abandoned, where it
appears that the owner made extensions of the option to the assign-
ors and that, during the extension period, the assignee purchased
part of the lands, it appearing that there was no fraud or deceit,
that the parties dealt at arm's length, and that findings to that effect
depend on the credibility of the witnesses.

Appeal from a judgment of the superior court for
King county, Brawley, J., entered June 10, 1921, in
favor of the plaintiff, in an action on contract, tried to
the court.  Affirmed.

*Farrell, Kane & Stratton,* for appellant.
*Winter S. Martin* and *A. C. Hough,* for respondent.

HOLCOMB, J.—Respondent sued for, and had judg-
ment against appellant for the sum of $2,200, upon an
alleged agreement wherein appellant agreed to pay
that sum to respondent in case he exercised an option
thereby assigned to him for the purchase of certain
land in Arkansas.

The option agreement covered about 714 acres of
land, which were believed to be chiefly valuable for the
manganese ore contained therein at a time when man-
ganese was in great demand and very valuable.

Respondent's complaint alleged in substance that,
prior to May 28, 1918, it had, through its agent, J. B.
Champlain, secured an option in writing from the

[1]Reported in 207 Pac. 234.

owners and their agent of the Arkansas lands described in the complaint, by the terms of which it was given the right and privilege of purchasing the lands described therein for an average sum of $25 per acre from the owners of the lands, until June 10, 1918. The complaint alleges the execution of the option agreement of May 28, 1918, which is fully set forth as an exhibit attached to the complaint, and that thereafter, in conformity with the contract, an agent of appellant went to Arkansas, and after examination of the lands under option, negotiated with certain of the owners of the lands, and by and through such negotiations secured an extension of the option for a period of thirty days from June 10, 1918, and a further extension thereof, and on July 17, 1918, and after an examination of the lands, purchased 124 acres of the lands from the owners thereof. It is then alleged that, by reason of such facts, there is due and owing from the appellant the sum of $2,200, no part of which has been paid.

Appellant's answer admits that he entered into the contract set up by respondent, and as an affirmative defense alleges that, after the execution of the written contract set out in respondent's complaint, appellant sent his agent, W. J. Rogers, to investigate the lands, and thereafter on June 10, 1918, notified respondent that no lands would be purchased under the option, and that appellant would consider the option terminated, and that, after the termination of the option and contract on June 10, 1918, and after the abandonment of the same by respondent and appellant, appellant, through his agent, Rogers, entered into a subsequent agreement with respondent, by the terms of which appellant agreed to, and did, purchase approximately 125 acres of land in Arkansas, at an agreed price of $25 per acre. The affirmative allegations of the answer were denied by reply.

Appellant's assignments of error all relate to the claim that the evidence was insufficient to justify the court's findings, decision and subsequent judgment thereon.

The option for the purchase of the 714 acres recites the consideration of one dollar, receipt of which is acknowledged, and provides that the appellant should first proceed and examine the land in such manner as he should elect for the purpose of determining its value, and should he be satisfied with the nature, quality, value and title to the property, he would pay the sum of $25 per acre to the original owners for all or any part of such property as he might elect to obtain, first being satisfied by the usual customary method of abstract of title that the respondent had merchantable title therein and thereto. There were provisions for the first payment of $2,200 as the purchase price of the option, and the further sum of $5,000 from the sale of ore taken from the property, and the further sum of $25,000 from the net receipts from the sale of ore from the land.

As originally drawn by the attorney employed by appellant, one paragraph of the contract read as follows:

"It is understood that the party of the second part shall first proceed to the land and examine the property in such manner as he may elect for the purpose of determining its value, and should the party of the second part be satisfied with the nature, quality, value and title of the property in the first party he will agree to pay the sum of $25 per acre in the manner hereinafter stated, upon first being satisfied by the usual and customary method of abstract of title that the first party has merchantable title therein and thereto."

This paragraph was objected to by officers and agents of respondent, for the reason that it did not

clearly appear that Clark should pay. the purchase price of the option, that is, $2,200, in the event he should see fit to take less than the total acreage of the option, which was 714 acres. After some discussion as to the advisability of a change in that regard, Clark agreed to the change and personally struck out with his pen the words "in the manner hereinafter stated," immediately after the words "twenty-five dollars per acre," and inserted with his pen the following words: "To the original owners for all or any part of said land as party of the second part (appellant) may elect." Under this paragraph of the contract as so changed, respondent contends that it is clear that Clark agreed to pay the company $2,200 as the purchase price of the option, provided he should elect to take any part of the 714 acres offered to him in the option agreement; that he did first elect to take 204 acres, and afterwards did take 124 acres, paying the original owners therefor, and that therefore he is bound by his agreement to pay the $2,200 as the purchase price of the option.

There is much conflict in the evidence as to what was done after appellant sent his representative to Arkansas to investigate the land. Rogers was not only the representative of appellant, but, as it developed at the trial, was a joint-venturer with appellant in the project.

Several ambiguous and confusing telegrams were sent from Arkansas to appellant and to the officers of respondent, and appellant contends that on June 6, 1918, Rogers terminated the option agreement, and later, on June 10 or 11, entered into a new agreement whereby appellant and Rogers were to pay $30 per acre and twenty per cent commission to be paid out of royalties. On the other hand, Champlain, who was

the representative of respondent in Arkansas, contends that the offer of $30 per acre and a commission of twenty per cent was for entirely different tracts of land, being 860 acres, options on which had been obtained by one Renich, and who was negotiating for the sale thereof as manganese ore lands. There is evidence on the part of respondent that Rogers was inimical to the contract as drawn between appellant and respondent and determined to defeat the contract from the start. This is denied by Rogers. It is clear, however, from all the testimony that Rogers, after his investigation, determined, as he had a right to do under the option agreement between respondent and appellant, that most of the tracts optioned were not satisfactory, and settled down to two tracts containing about 204 acres, owned by two men named Patterson. According to Champlain, the representative of respondent, the options on these lands would expire on June 10 (June 9 falling on Sunday), that being thirty days after May 9, when the Pattersons had given their options to one Hampton, their agent, with authority to sell their property. It was Hampton who entered into the option agreement with Champlain for the sale of the 714 acres of land supposed to contain manganese ore. Hampton was, therefore, the primary or immediate agent of the Pattersons. There is some contention that the option from the Pattersons had expired prior to the time the option from Hampton to respondent would expire, that is, that they gave their options to Hampton on May 4, to continue for thirty days, and the option would therefore expire on June 4, and consequently after June 4, 1918, respondent and its agents had no options to sell.

That contention cannot be sustained, for the reason that the Pattersons ratified the options Hampton, their

agent, had given respondent and actually renewed them orally for another period of thirty days, and later for another period. These transactions, appellant contends, were transactions directly with Rogers, and had nothing to do with the options theretofore granted to Hampton, and by Hampton to respondent, and by respondent to appellant.. There is testimony, however, tending to show that Champlain and Hampton attempted to procure an extension of the options from the Pattersons on a prior date, June 6, and failed at that time, but afterwards returned in company with Rogers, and then procured an oral agreement from the Pattersons whereby the Pattersons' power of attorney to Hampton and option to sell was extended thirty days upon the payment to them of $150—$50 to be paid, and which was paid, to one of the Pattersons, and $100 to be paid, and which was paid, to the other Patterson by Rogers. Champlain testifies that this extension of thirty days was agreed upon by Rogers and Hampton, and was distinctly and definitely understood to be an extension of Hampton's original power of attorney or option from the Pattersons.

The trial court accepted Champlain's version as to the dealings with the Patterson lands, and the options therefor, finding that the Hampton option was extended and that respondent's option was extended after June 10. The Patterson lands were portions of the 714 acres involved in the agreement between these parties.

The trial court had the advantage of seeing and hearing the witnesses, and therefore was, as we have always held, much better able to judge of their credibility than are we. Although it may have been an improvident bargain for appellant, it was of his own making. The parties dealt with each other at arm's length, and there

is not involved in this case any element of fraud, deceit or coercion. It is almost entirely a question of fact. It is somewhat similar to the case of *Hunner v. Mulcahy*, 45 Wash. 365, 88 Pac. 521.

We are unable to say that the evidence preponderates in any way against the findings of the trial court, and must therefore affirm the judgment.

Judgment affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.